UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEY GAINES,<br><br>                        Plaintiff,<br>v.<br><br>GENERAL MOTORS COMPANY,<br><br>                        Defendant. | Case No.: 17cv1351-LAB (JLB)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This is a putative class action arising from the sale of Cadillac SRX vehicles with allegedly defective sunroofs. Plaintiff has amended the complaint once, to name the correct defendant and to add new claims. Defendant General Motors, LLC ("GM") has now moved to dismiss.

**Background**

These facts are taken from the First Amended Complaint ("FAC"). Around May, 2010, Plaintiff Kelley Gaines bought a model year 2010 Cadillac SRX vehicle in San Diego. The car came with an express 48-month, 50,000 mile bumper-to-bumper warranty, that covered the vehicle until it reached four years or 50,000— whichever occurred first.

Cadillac SRX model years 2011–2013 also provided a warranty called the "Cadillac Shield." Around August 30, 2013, GM issued a bulletin covering Cadillac

1

SRX model years 2010–2013, which Gaines attaches to the FAC. The bulletin's subject heading is "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet." (FAC, Ex. 3.) The bulletin said some customers might experience water leaks in the front driver or passenger floor area, or find the carpet there wet. It identifies three of the most common causes for leaks, and gives instructions for two tests technicians should use to determine what the problem is. It then identifies two procedures for technicians to use to diagnose and then repair the leaks, depending on the cause. One procedure addresses a situation when sun roof drain hoses are not properly functioning, and involves replacing the drain hoses and then sealing the cowl seam. If the drain hoses are properly functioning, the technician is directed to seal the cowl seam only.

Around September, 2013, GM issued a second, updated bulletin. (FAC, Ex. 4.) It included the same elements described in the previous paragraph. The FAC identifies leaks caused by any of these factors and repairable as described in the bulletins as the "Leaking Sunroof Defect." (FAC, ¶ 14.)

Around January 14, 2015, GM issued a document (FAC, Ex. 5) describing a customer satisfaction program for Cadillac SRX model years 2010–2012 that was to be in effect until January 31, 2017. The program applied to vehicles in various other states and markets, but excluded California. According to this document, certain SRX vehicles in the identified model years "may have a condition in which the vehicle's sunroof drain hose material may shrink due to changing environmental conditions." (*Id.* at 1.) It said that if the drain hoses shrink, they could disconnect, leading to leaks.

According to the FAC, each year between 50,000 and 60,000 Cadillac SRX vehicles from model years 2010 to 2013 had the Leaking Sun Roof Defect, though it does not say identify when the alleged defects manifested (*i.e.*, when the roofs started leaking) or how many were covered by warranty. It also does not say how many of these vehicles were bought by putative class members.

Gaines first experienced a sunroof leak in late February of 2017, when she found the floorboard carpet soaked. (FAC, ¶ 35.) Shortly after that, she took her car to be repaired. The right sunroof drain hose was loose, and the right front sunroof drain was not seated in the grommet at the firewall, as described in the two bulletins. (*Id.*, ¶37.) The shop replaced the two drain hoses and cleaned her car, charging her $442.48 to repair the sunroof; and $563 to remove, dry, clean, and shampoo the carpet. Her insurer paid a portion of the costs, leaving her to pay her deductible of $250. (*Id.*, ¶ 38.)

Gaines seeks to represent a class of purchasers of model year 2010–2013 Cadillac SRX vehicles who experienced the Leaking Sunroof Defect and who were required to pay for repairs. She brings six claims: breach of express warranty, violations of California's Consumer Legal Remedies Act (CLRA), a claim under Cal. Bus. & Prof. Code §§ 17200 *et seq.* for unfair and/or fraudulent business practices, a claim under Cal. Bus. & Prof. Code §§ 17200 *et seq.* for untrue or misleading advertising, a claim for unjust enrichment, and a claim for declaratory relief. The causes of action all arise under California law, and Gaines relies on diversity as the source of jurisdiction.

**Legal Standards**

A motion to dismiss tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. Id. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light

most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

To meet the ordinary pleading standard and avoid dismissal, a complaint must plead "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. But claims that sound in fraud, including those arising under state law, must be pled with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). This includes alleging who made various misrepresentations, how the misrepresentations were conveyed to the plaintiff, and under what circumstances. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998).

The Court is obligated to examine its own jurisdiction, including jurisdictional issues such as standing; it must do this *sua sponte* if necessary. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc).

**Discussion**

    **Certification of a Class**

Although class certification is not implicated in the motion to dismiss, the Court must be mindful of it. If no class is certified, the Court cannot exercise jurisdiction over the case at all. This is because the amount in controversy requirement will not be met, and also because diversity will no longer exist. Under diversity provisions in the Class Action Fairness Act (CAFA), only minimal diversity is required, and a limited liability company is deemed to be a citizen of the state where it has its principal place of business and the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). But if the case relies on ordinary diversity

jurisdiction, rather than jurisdiction under CAFA, GM will be deemed a citizen of every state where its owners/members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). As a publicly-traded company, GM is certain to have some owners who would destroy diversity.

In addition, Fed. R. Civ. P. 23(c)(1)(A) calls for a determination on class certification "[a]t an early practicable time after a person sues or is sued as a class representative." *See also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1802 (2018) (noting that Rule 23 instructs that class certification should be resolved early in the case). So preliminary observations about certification of a class are appropriate, even if the Court is not yet ruling on that issue.

**The Leaking Sunroof Defect**

The complaint relies on California law, which recognizes two kinds of product defects: manufacturing defects and design defects. *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1119 (Cal. App. 2 Dist. 2002). It is not particularly clear that the Leaking Sunroof Defect is actually a defect as contemplated under California law. Under the bulletins Gaines relies on to identify the Defect, sunroofs are susceptible to leaks for a number of different reasons, including poor workmanship and substandard materials. In other words, a leaking sunroof may be a symptom of several different defects, and it is not clear they are related in any way. The FAC does not allege the defect is were present in all cars, but its reliance on the reference to several possible causes makes clear that not all cars' leaky sunroofs are caused by the same underlying defects or problems.

But it is clear all of the named causes are manufacturing defects, not design defects. *See id.* at 1120. As described in the FAC, the Leaking Sunroof Defect is not a design defect. And even if it were, the Cadillac SRX would not be defective under that test, because it is usable as a car and, as discussed below, the potential for sunroof leaks does not render the car unsafe.

///

Because the parties have not briefed the issue of whether the Leaking Sunroof Defect is actually a single defect, the Court will accept, *arguendo* that it is.

**Breach of Warranty**

Gaines' vehicle's warrant expired no later than May of 2014, and might have expired sooner if she exceeded the 48,000 mile limit before then. Her sunroof leak occurred in February of 2017, well after her vehicle's warranty had expired, and even after the end of GM's customer service program. In any event, this program did not cover her car, nor has she alleged that her leak was caused by the drain hoses that were prone to shrinking and were identified as the basis for the program. Her own car was not covered by the "Cadillac Shield." To the extent any cars by putative class members may have been covered by the customer service program or the Cadillac Shield, and have claims arising from those programs, she has no standing to bring those claims.

Gaines argues that the Defect was covered by the warranty because it was present in her car and because it manifested during the warranty period. She has not pointed to any language in the warranty supporting her interpretation, but the parties appear to agree that problems that "manifest" during the warranty period, and only those problems, are covered. She has also not alleged that the warranty covered incidental damages, such as damaged carpet caused by a leak.

Gaines' theory is that the Defect manifested in other people's cars, and that therefore the warranty covers any latent defect in her car too, even if she experienced no loss during the warranty period. This would be a very unusual term, and in the absence of a citation to particular language in the warranty, it is not plausible. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 831–32 (Cal. App. 2 Dist. 2006) (rejecting an interpretation of a warranty that would have covered a latent defect that leads to a malfunction after the term of the warranty). Furthermore, the parties describe the warranty terms here as being similar to those construed in *Daugherty*.

Gaines also argues that because GM knew about the Defect and knew that it had manifested in other owners' cars, it "manifested" during the warranty period for purposes of her warranty too. She has not cited any authority for this proposition, and available caselaw appears to construe understand "manifest" to refer to a defect in the plaintiff's own product becoming apparent, not anything involving other owners' products, or a seller's knowledge about products in general. Citing *Daugherty*, the Ninth Circuit explained that "[t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). That case dealt with head gasket failure, which was alleged to be a common problem. *Id.* at 1021. But because the plaintiff's car's head gasket functioned throughout the warranty period, there was no breach of warranty. *Id.* at 1022–23. The panel rejected the plaintiff's claims based on the existence of the defect during the warranty period, and the seller's alleged knowledge of the defect at the time of sale. *Id.* Similarly, in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1138 (9th Cir. 2012), the panel addressed a design defect the manufacturer allegedly knew about, yet described it as having "manifested after the expiration of the warranty."

*Clemens* also observed that if a product performs as warranted within the warranty period, there can be no claim for breach of express warranty.

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

534 F.3d at 1023. Here, Gaines' car performed as warranted within the warranty period, and only experienced a sunroof leak three years after the warranty expired,

7

when her sunroof was no longer covered by an express warranty. This claim cannot be salvaged by amendment.

**Claims Concerning Misrepresentation and Fraud**

The FAC does not allege any facts plausibly suggesting GM knew about any Leaking Sunroof Defect before Gaines bought her car. The earliest event suggesting GM might have known about some widespread problem with sunroof leaks was its issuance of the first bulletin in 2013. And even that creates, at best, an inference that it knew some Cadillac SRX sunroofs were leaking for various reasons.

In the absence of GM's knowledge at the time of sale, Gaines must show some kind of duty to disclose after the sale, when GM allegedly first learned about the Defect. *Wilson* stands for the proposition that, under California law, a manufacturer has a duty to disclose and can be liable for an omission only if the defect creates an unreasonable safety risk. 668 F.3d at 1141–43. There must be a sufficient nexus between the defect and the hazard. *Id.* at 1144.

Gaines argues that the Defect constitutes a safety hazard because water could damage wiring or electrical components. (Opp'n at 2:18–3:3.) She has not identified which wiring or electrical components are at risk, how likely it is they would be damaged in the event of a leak, or what would happen if they were damaged.[1] She does not have to show that anyone was actually injured, but she must plead facts that plausibly show an unreasonable safety risk. *See Kirsopp v. Yamaha Motor Co. Ltd.*, 2015 WL 11197829, at *10 (C.D. Cal., Jan. 7, 2015). She has not pleaded facts plausibly showing any safety risk; it remains purely

---

[1] She may have this information, because in her car the padding between the firewall and instrument panel assembly was saturated with water and the repairs included an electrical system diagnostic. (FAC, ¶¶ 36–37.) Apparently nothing was found to be wrong, however.

8

conjectural at this point. Given the large number of vehicles she says were affected, the lack of any known injuries undercuts the plausibility of her claim of an unreasonable safety risk. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017).

Because Gaines' CLRA, § 17200,[2] § 17500, and claims sound in fraud, she must also comply with Fed. R. Civ. P. 9(b)'s pleading standard, which she has not done. For example, her false advertising claim never identifies any communication or advertisement as deceptive. Her claim that failing to honor the expired warranty amounts to deception is conclusory and, as discussed above, meritless. (*See* FAC, ¶ 106.) The only other communication she identifies as deceptive is an advertisement about vehicles in model years 2011 or newer, and how they are covered by the Cadillac Shield. (FAC, ¶ 107.) She never bought any of those vehicles and her car was never covered by the Cadillac Shield; accordingly, she has no standing to bring those claims.

Furthermore, because the alleged Defect manifested outside the warranty period, Gaines cannot state a CLRA claim unless one of two exceptions applies to her claim. *See Sony,* 758 F. Supp. 2d at 1094 (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (2008)). Gaines has not pled facts showing that either applies here. She has also failed to allege facts showing GM had a duty to disclose under the CLRA. *See id.* at 1095.

/ / /

---

[2] To the extent Gaines is bringing her § 17200 claim under the "unfair" prong of the statute, she cannot state a claim. "Failure to disclose a defect that might shorten the effective life span of a component part to a consumer product" does not satisfy the "substantial injury" element required to state such a claim. *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010). Where a product functioned as warranted throughout the term of an express warranty, a plaintiff cannot state a claim under the "unfair" prong. *Id.*

**Other Issues**

Although Gaines seeks injunctive relief to prevent future violations, any injunctive relief appears to be moot. In model years 2014 and newer, the sunroof has been redesigned and any defect corrected. (FAC, ¶ 7.) Furthermore, there is no reason to suppose either Gaines or the putative class members would benefit from such an injunction. Her claims for unjust enrichment and declaratory relief are derivative of her other claims. Furthermore, she has not shown how declaring her rights concerning her car's formerly leaking sunroof would provide any meaningful relief. This same dispute or one like it is unlikely to arise now that her car has been repaired.

**Conclusion and Order**

Gaines' opposition requests leave to amend. Ordinarily, leave to amend is granted unless the complaint cannot be saved by amendment. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Here it is clear Gaines' breach of express warranty claim cannot be salvaged. It is doubtful the other claims can, although the Court cannot say with certainty that they cannot. The breach of express warranty claim is therefore **DISMISSED WITH PREJUDICE**. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

If Gaines believes she can successfully amend, she should file an *ex parte* motion for leave to amend that complies with Civil Local Rule 15.1(b) and (c). She must do so within 28 calendar days of the date this order is issued; otherwise, the Court will construe her failure to seek leave to amend as abandonment of her claims and this action will be dismissed. If she files such a motion, GM may within 21 calendar days file an opposition. No reply briefs are to be filed without leave.

If she seeks leave to amend, Gaines should be certain her proposed second amended complaint remedies all the defects this order has identified. She should also review GM's briefing and correct defects that briefing has identified. If she fails

/ / /

to correct defects that she had notice of, the Court will assume she cannot successfully do so.

In deciding whether to amend, Gaines should consider whether a class can be certified and whether this case can proceed as a class action. If she does amend, she must file a motion for class certification within **90 days of filing her amended complaint**.

**IT IS SO ORDERED**.

Dated: February 25, 2019

Hon. Larry Alan Burns
Chief United States District Judge